**William F. HIGGINS, Appellant,**

v.

**J. BURROUGHS; Lieutenant Dietrich; Pasquale Baron; and Charles H. Zimmerman.**

No. 86–1162.

United States Court of Appeals, Third Circuit.

Argued Oct. 27, 1986.

Reargued March 3, 1987.

Certiorari Granted Oct. 5, 1987.

Decided Nov. 27, 1987.

A. Leon Higginbotham, Jr., Circuit Judge, concurred in judgment and filed opinion.

Argued Oct. 27, 1987.

Before ADAMS *, HIGGINBOTHAM, and GARTH, Circuit Judges.

Reargued March 3, 1987.

Before GIBBONS, Chief Judge, HIGGINBOTHAM and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

William Higgins, a prisoner in the Commonwealth of Pennsylvania's Graterford State Correctional Institute (SCIG), was prohibited by a state prison regulation from carrying his rosary beads into the prison visiting area. During the years of his confinement, Higgins had carried his rosary beads in his trouser pockets. In that fashion he had carried them with him into all areas of the prison, including the visiting area.

In October 1984, new trousers were issued to the prisoners. The trousers had no pockets. Higgins therefore carried his rosary beads in his hands and was forbidden from carrying them into the visiting area by a prison regulation which only permitted wedding rings, glasses and approved medals to be brought into the visiting areas.

Higgins filed a *pro se* complaint, which protested the infringement of his first amendment rights. SCIG defended its practice and the validity of the regulation by alleging that security considerations required that Higgins be prohibited from carrying rosary beads into the visiting

* This case was originally heard on October 27, 1986. Thereafter, Judge Adams, a member of the panel, resigned from the court. An order of rehearing was issued on February 2, 1987.

area. The district court, granted summary judgment in favor of SCIG and against Higgins applying the standard we had announced in *Shabazz v. O'Lone*, 782 F.2d 416 (3d Cir.1986), *rev'd, O'Lone v. Estate of Shabazz*, — U.S. —, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Earlier, in *St. Claire v. Cuyler*, 634 F.2d 109 (3d Cir.1980) we had held that a mere declaration by prison officials, that certain religious practices raise potential security concerns, was sufficient to override a prisoner's first amendment rights.

*Shabazz* rejected the *St. Claire* standard holding that *St. Claire* failed to place on the state the "burden of showing that bona fide security problems occurred or are likely to arise because of the religious practice at issue." 782 F.2d at 419. Instead, the *Shabazz* court required that the state prove:

█ that the challenged regulations were intended to serve, and do serve,, the important penological goal of security, and

█ that no reasonable method exists by which appellants' religious rights can be accommodated without creating bona fide security problems.

782 F.2d at 420.

In the present case as noted, the district court granted summary judgment for SCIG. We reversed the district court's order and remanded so that further proceedings could go forward in the district court. The panel majority [1] held that under *Shabazz*, SCIG had not carried its burden of demonstrating that a bona fide security problem had occurred or was likely to arise because Higgins hand-carried his rosary beads into the visiting area. In so holding, the majority stated that the threshold requirement of the Third Circuit *Shabazz* standard had not been met. As a result, we were not required to address the second prong of the *Shabazz* test, i.e. the accommodation standard. That standard would have required that SCIG make reasonable efforts to accommodate both Higgins' religious practices and SCIG's security concerns. *Higgins v. Burroughs*, 816 F.2d 119, 124 (3d Cir.1987).

In the interim, certiorari had been granted in *Shabazz v. O'Lone*, — U.S. —, 107 S.Ct. 268, 93 L.Ed.2d 245 (1986). On June 7, 1987, the Supreme Court announced its opinion in *O'Lone v. Estate of Shabazz*, — U.S. —, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The Supreme Court reversed our *in banc Shabazz* decision citing to *Turner v. Safley*, — U.S. —, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) and held, among other things, that prison regulations, which are alleged to infringe constitutional rights, are to be judged "under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." 107 S.Ct. at 2404. It also held that "[w]hen a prison regulation impinges on inmates constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* The Court therefore rejected the *Shabazz* standard we had adopted and which had imposed a burden on prison officials to prove that no reasonable method existed by which an inmate's religious rights could be accommodated without creating a bona fide security problem.

On October 5, 1987, the Supreme Court granted certiorari in the present case (*sub nom Burroughs v. Higgins*, — U.S. —, 108 S.Ct. 54, 98 L.Ed.2d 18); vacated our judgment and remanded to us for further consideration in light of *O'Lone v. Estate of Shabazz*, 482 U.S. —, 107 S.Ct. 2400, 96 L.Ed.2d 282.

We are of the view that whether the standard applied in *Higgins*, i.e. that no bona fide security problem had been demonstrated by the state, or the standard applied by the Supreme Court in *O'Lone*, i.e. that "when a prison regulation [is alleged to impinge] on inmates' constitutional rights the [prison] regulation is valid if it is reasonably related to legitimate penological interests," *O'Lone*, — U.S. —, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282, is employed, no difference in result would obtain. Nevertheless, because the parties may require additional evidence in connection with the standard now announced by the Supreme Court, and because the district court may,

---

1. Judge Higginbotham dissented, *see* 816 F.2d     124–26.

on the basis of such evidence, discern a difference between the application of the two standards, we deem it appropriate to remand to the district court for further consideration in light of the Supreme Court's opinion in *O'Lone*. To the extent that the district court, after such reconsideration, determines that additional proceedings on remand are appropriate, the district court is directed to take such actions as it deems necessary to conclude this case.

We will therefore remand this case to the district court to reconsider Higgins' claim in light of the *O'Lone* standard, to adduce other evidence such as it may deem appropriate for such reconsideration and for any and all other proceedings that may be indicated.

A. LEON HIGGINBOTHAM, JR., *Circuit Judge*, concurring in the judgment.

When we first decided this appeal, on April 10, 1987, I dissented from the majority's reversal of the district court judgment upholding as constitutional the prison regulation that bars appellant Higgins from hand-carrying his rosary beads into the visiting area. *Higgins v. Burroughs*, 816 F.2d 119, 124–26 (3d Cir.) (*"Higgins I"*) (Higginbotham, J., dissenting), *vacated and remanded*, —— U.S. ——, 108 S.Ct. 54, 98 L.Ed.2d 18 (1987). Given the Supreme Court's decision and directive remanding the matter to this Court for further consideration in light of *O'Lone v. Estate of Shabazz*, 482 U.S. ——, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), I agree with the majority's present decision to remand this matter to the district court for application of the *Estate of Shabazz* standard *ab initio*. Because the majority has gone further than necessary in deciding this appeal, however, I concur only in its judgment.

Developments since last April have vindicated one concern raised by my earlier dissenting opinion, the untimeliness of our initial decision. At that time, when our decision in *Shabazz v. O'Lone*, 782 F.2d 416 (3d Cir.1986) (*in banc*), *rev'd*, *Estate of Shabazz*, 482 U.S. ——, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), was being reviewed by the Supreme Court, I believed we acted precipitously when we decided this matter. *Higgins I*, 816 F.2d at 124 (Higginbotham,

J., dissenting). Had we held this appeal for less than two months, we could have rendered in June the decision we render today.

I am unable to join the majority's opinion this time around because it does more than remand this matter to the district court for additional factfinding and application of the *Estate of Shabazz* standard. The majority also offers, in passing, its "view" that "no difference in result w[ill] obtain" under the new legal standard. Maj. typescript at 5. It is just as likely, however, that the district court, once it applies with care the *Estate of Shabazz* standard, could justifiably differ with the majority's assessment of the summary judgment record before us. Indeed, especially if the district court were to determine on remand that additional factfinding is required, we can have no basis for predicting now what such additional evidence would demonstrate. If we mean to remand this matter, we should do it without leaving our thumb on the district court's scale. If we mean to decide the matter here and now, however, we should do so explicitly.

For the foregoing reason, I respectfully concur in the majority's judgment.